BUYS *v.* MICHIGAN MUTUAL LIABILITY CO.

1. HIGHWAYS AND STREETS—DEFECTIVE COUNTY HIGHWAYS—CLAIMS FOR INJURIES—TIME LIMIT.

Within 60 days after occurrence of an accident resulting in injuries because of defects in county highway, it is necessary to serve upon the county clerk or his deputy a written notice setting forth details of accident, extent of injuries, names and addresses of witnesses, if any, and that person injured intends to hold county liable in order to hold the county responsible (1 Comp. Laws 1929, § 3996).

2. CONTRACTS—COUNTIES—INSURANCE—BURDEN OF PROOF—STATUTES.

To maintain an action sounding in contract against county road commission's insurer, commenced after expiration of period

allowed by statute for filing claims against the county, after having had a single conversation with insurer's adjuster during such period, plaintiff would have burden of showing he knew of statutory limitation and to have made a promise to forbear bringing suit until settlement negotiations could be attempted (1 Comp. Laws 1929, § 3996).

3. TORTS—COUNTIES—INSURANCE—BURDEN OF PROOF—STATUTES—FRAUD.

To maintain an action sounding in tort against county road commission's insurer, commenced after expiration of period allowed by statute for filing claims against the county, after having had a single conversation with insurer's adjuster during such period, plaintiff would have burden of showing either that he knew of the statute when talking to the adjuster but in spite of such knowledge and in reliance upon the adjuster's alleged misrepresentations he forbore serving notice of claim or that he was ignorant of the statute but would have consulted counsel and become acquainted with it before period expired (1 Comp. Laws 1929, § 3996).

4. CONTRACTS—QUASI CONTRACTS—COUNTIES—INSURANCE—BURDEN OF PROOF—IGNORANCE OF LAW.

To maintain an action based on *quasi* contract against county road commission's insurer, commenced after expiration of period allowed by statute for filing claims against the county and after having had a single conversation with insurer's adjuster during such period, plaintiff must not only show that the adjuster deliberately attempted to mislead him, so that it would be unconscionable for the insurer to retain the benefit in the expiration of the statutory period, so unjustly obtained, but also that the attempt was successful by showing that his own ignorance of the statute was not responsible for his failure to file a claim within the time permitted by statute (1 Comp. Laws 1929, § 3996).

5. HIGHWAYS AND STREETS—DEFECTIVE HIGHWAYS—INSURANCE—BURDEN OF PROOF.

In action by person injured when his farm wagon tipped over on county highway allegedly because of a defect therein, against county road commission's insurer, plaintiff *held*, not to have sustained his burden of proof either in contract, tort or *quasi* contract.

6. APPEAL AND ERROR—NONJURY ACTION AT LAW CASE—EVIDENCE.

In nonjury action at law where trial court gave plaintiff ample opportunity to submit his entire case and gave plaintiff's testimony its full probative value, alleged erroneous rulings on some questions of evidence were not prejudicial.

Appeal from Van Buren; Warner (Glenn E.),. J. Submitted October 8, 1941. (Docket No. 12, Calendar No. 41,643.) Decided January 5, 1942.

Action by Otis T. Buys against the Michigan Mutual Liability Company on alleged express or *quasi* contract to reimburse him for injuries suffered in an accident, or for fraud and deceit. Judgment for defendant. Plaintiff appeals. Affirmed.

*Earl L. Burhans* and *Carroll B. Jones,* for plaintiff.

*George J. Cooper* and *Lewis R. Williams,* for defendant.

Butzel, J. Plaintiff Otis T. Buys, who owns a farm in Paw Paw township, Van Buren county, suffered a multiple fracture of the knee on September 6, 1939, when the bolster of his wagon broke, and the wagon tipped over on the highway in the driveway in front of his farm house. He claims that the accident was caused by a faulty condition of the road due to negligence of the Van Buren County Road Commission.

In imposing the obligation on the counties to keep in reasonable repair so that they shall be reasonably safe and convenient for public travel all county roads, bridges, culverts, the general highway law (Act No. 283, chap. 4, § 21, Pub. Acts 1909, 1 Comp. Laws 1929, § 3996 [Stat. Ann. § 9.121]) also provides that the county shall not be liable unless the claimant shall serve or cause to be served, within 60 days after an injury shall have occurred a notice in writing upon the county clerk or deputy county clerk, which notice shall set forth substantially all the facts, the time and place of the accident, the manner in which it occurred, the extent of the in-

juries, names and addresses of witnesses, if any, and the further fact that the person injured intends to hold the county liable, et cetera. It is conceded that the statutory notice was not given within the 60 days.

Plaintiff's wife reported the injury orally to the office of the Van Buren County Road Commission, which notified defendant Michigan Mutual Liability Company. Defendant was the commission's public liability insurer on a policy limiting liability, for injury to one person, to $5,000. Defendant informed the commission that the matter had been turned over to defendant's claim department for attention, in a letter dated September 14, 1939.

After six days in the hospital, plaintiff was able to go home where, after some time, he became able to move about on crutches, and eventually without them. On October 20, 1939, 44 days after the accident, Wade Carney, one of defendant's adjusters, called on plaintiff at his home and discussed the accident. Plaintiff largely relies upon what was said at this interview, and what took place thereafter, to make out his present cause of action against defendant.

Plaintiff testified:

"He came into the room there. Mrs. Buys said 'Here is a man to see you' and he stepped into the door and said 'I represent the Michigan Mutual Liability Company.' * * * He * * * started to ask me questions about how long I had been out of the hospital and what my bill was worth and I looked up at him and said 'What are you, an insurance adjuster?' He said 'Yes' and I said 'I haven't started any suit.' 'No, but,' he said, 'You are entitled'—he said 'You will get compensation.' I said 'Why, I am not an ambulance chaser' and Mrs. Buys spoke up then and she said 'We have been to

a lot of expenses.' 'Well,' I said, 'Who sent you out here?' He said 'The road commission sent me out here.' We talked along and he got to speaking about the hospital bill being so high  *  *  *  and he asked me how many days I had been in there and I told him I couldn't figure it out exactly—I couldn't remember because I had been weak night and day and I could figure it out by the amount I paid to the hospital. And he talked quite a little about different things. He asked how the accident happened—what happened to the wagon.  *  *  *  I showed him what a bolster was like on a wagon like the one that tipped over. We had a very nice conversation—very friendly conversation.  *  *  *  When he got ready to go and Mr. Carney was getting ready to get in his car and I said, 'Now, Mr. Carney,' I said, 'How do I get anything out of this? Do I have to sue the county, and they sue you, or how is it done?' 'Oh,' he said, 'Don't do that.' He said, 'Give us a chance to settle this first.' 'Well,' I said, 'When will I see you again?' 'Well,' he said, 'When have you got to see your doctor?' I said, 'I got to go up a week from Monday.' 'Well,' he said, 'I will see you, then in two or three weeks,' and I said, 'Okay' and that is the last time I have seen him, until today.  *  *  *

"*Q.* Just how did he say that about the compensation?

"*A.* Why, he said that—well, I spoke up and said I didn't know—when he said that—about compensation—I said I didn't know that the county carried any insurance on the highway accidents. 'Oh,' he said, 'Yes, we carry insurance.' "

Plaintiff's wife testified:

"Mr. Carney called at our house.  *  *  *  I wouldn't say definitely that I heard all the conversation between Mr. Carney and my husband, but I think I did. Well, the first thing there came a rap at the door, and I went out, and Mr. Carney, as he introduced himself, was there and said that he was

looking for Mr. Otis Buys, and I said 'Yes.' 'Well,' he said, 'I have a report that he has met with an accident, can I see him?' \* \* \* Asked him in and I gave him a chair and he sat down, and he started talking—passed the time of day and started asking questions. And I was busy around there and didn't pay any particular attention until finally I heard my husband say 'What are you, an insurance adjuster?' He said, 'Yes.' \* \* \* I came then right into the conference and said that the accident was on the 6th of September. And then they discussed different things and my husband says—Mr. Carney said that he represented the Michigan Mutual Liability, I think it is, and my husband says—'I haven't started suit.' 'Well,' he said 'It was reported from the road commission.' My husband said: 'Well,' I didn't know that they carried insurance.' He said, 'Yes' and I think he said that he had been on some case the day before, but I could not say that definitely, and my husband says 'Well, I haven't started suit against anyone.' 'Oh,' but Mr. Carney said, 'You will get compensation.' And my husband said, 'Well, I am no ambulance chaser.' And right here I spoke up and said 'Well, it has been costing us a lot of money.' Mr. Carney said 'I am sure it has, Mrs. Buys, and' he said, 'You will be reimbursed.' That is as far as my conversation went."

Carney's testimony contradicts the foregoing in several particulars. He testified that he told plaintiff that he represented the road commission, but he denied that he stated that he represented defendant. He testified that neither defendant's name nor the subject of insurance was mentioned. He denies that he told plaintiff that any liability would be admitted or that he told plaintiff that he would be reimbursed or compensated. He further denies that he would be back in two weeks to settle the matter up, but admitted that plaintiff had asked him if he would

return in two or three weeks, and that he replied that he would. When asked if he knew that two or three weeks after October 20th would be beyond the 60-day period, he replied that he was "aware of the statute." He said he did not return because defendant was subsequently notified that plaintiff was represented by counsel which, according to defendant's rules, precluded its adjuster from renewing contact with plaintiff directly. Plaintiff admits that he did not retain counsel within the 60 days, nor for some time later.

Plaintiff's declaration counts alternately upon an express contract, *quasi* contract and fraud. The case was tried without a jury.

The trial court said, even after giving the testimony for plaintiff full probative force, negotiations never rose to the dignity of a contract. According to plaintiff's own testimony, nothing was definitely agreed upon but plaintiff was asked not to sue until defendant was given a chance to settle first. This is a far cry from an agreement to pay any fixed amount. It amounts at most to negotiations that were to be continued later. On January 11, 1940, a letter written by plaintiff's attorney to the county clerk of Van Buren county gave notice of the accident in the manner provided for by statute. He sought to excuse the four months' delay by stating that when Mr. Buys was interviewed by a representative of the county's insurance company a short time previous to November 1, 1939, it was then agreed between Mr. Buys and "your representative that no action would be taken by Mr. Buys pending negotiations for settlement." It will readily be seen that, while there were negotiations, there was no promise to pay any amount certain but to continue negotiations for a settlement.

The trial court further found "that plaintiff was not prevented by the statements of Wade P. Carney from serving written claim of injury. The plaintiff did not know that such claim was necessary." With respect to this finding, plaintiff in his appeal brief says: "There is no testimony in the case whether he did know or whether he did not know," that the notice was necessary. Plaintiff intended the last statement as a criticism of the finding, but we regard it as a confession of failure to sustain his burden of proof. This is so whether his cause of action sounds in contract or in tort. If it sounds in contract, then it is incumbent upon plaintiff to show that he knew of the statutory requirement of notice when he talked to Carney; otherwise he could not have agreed to forbear serving the notice within the 60 days, and his promise, if any, must have been merely to forbear bringing suit until settlement negotiations could be attempted. If his cause of action sounds in tort, then he has the burden of showing either that he was aware of the statute when he talked to Carney, but in spite of such knowledge and in reliance upon Carney's misrepresentations he forbore serving notice, or that he was ignorant of the statute when he talked to Carney, but would have consulted counsel and become acquainted with it within the remaining 16 days of the statutory period, had Carney not appeared on the scene and lulled him into a false sense of security. One or the other of the alternative factual hypotheses just mentioned must be made out, or there will be no proof that Carney's misleading conduct, rather than plaintiff's own ignorance of the law, was the proximate cause of plaintiff's injury. Even in *quasi* contract, it is not enough for plaintiff to show that Carney deliberately attempted to mislead him, so

that it would be unconscionable for defendant as Carney's principal to retain the benefit unjustly obtained; he must go further, and show that the attempt was successful, and this he leaves undone by failing to negative the inference that his own ignorance is responsible for his plight.

Plaintiff having failed to sustain his burden of proof, the judgment for defendant was right, and must be affirmed for that reason. Aside from the question of burden of proof defendant suggests that plaintiff's action, if he have any, should be brought against the road commission or the county rather than the present defendant. We do not determine the merits of this suggestion, or of the various claims of error that were made, since decision in the case at bar rests on the ground already indicated.

Other claims of error have been examined but found to have no merit. The judge gave plaintiff ample opportunity to submit his entire case. In reaching his decision he gave the testimony of plaintiff full probative value. The case was tried without a jury and even if the rulings of the judge on some questions of evidence were erroneous, as claimed by plaintiff, they were not prejudicial, and need not be discussed.

Judgment affirmed, with costs to defendant.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.